UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KAREN SUAZO,<br><br>        Plaintiff,<br>v.<br><br>TRUIST BANK INC.,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT FOR DEFAMATION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Karen Suazo ("Suazo") hereby states her Complaint for Defamation against Defendant Truist Bank Inc. ("Truist" or "the Bank"), as follows:

## INTRODUCTION

1. This is an action for defamation against Truist for its reckless and/or malicious false accusations to the Gwinnett County Police Department (the "Gwinnett Police") that Suazo stole approximately $20,000.00 through forgery and identity fraud. A true and correct copy of the police report filed by Truist, itself identifying two felonies, is attached hereto as *Exhibit A*.

2. Moreover, as Truist expected and intended, the Gwinnett Police re-published Truist's false accusations via a media release,[1] juxtaposing Suazo's image

---

[1] *See* News Details - Gwinnett | Gwinnett County and (20+) UPDATE: (Lawrenceville, Ga., August 30,... - Gwinnett County Police | Facebook. The release has now been edited—after Suazo presented herself to the Gwinnett Police to clear her name—to show that she was wrongly identified.

with accusations of criminal theft and fraud:



3.      As a result, this false accusation—tied specifically to Suazo's image—was re-published again by myriad media outlets, including, without limitation, Atlanta News First (f/k/a CBS46), Fox5 Atlanta, WSB-TV (Challen 2), YahooNews!, and various Spanish speaking outlets in the area, such as Telemundo Atlanta.

4.      Despite Suazo's request that Truist do so, to Suazo's knowledge Truist has failed to take any action to have these media outlets remove or update their coverage. Those that did so acted either on the Gwinnett Police's subsequent update that Suazo was misidentified or on Suazo's direct request and notification. Other outlets

are still circulating Suazo's image with these false accusations.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff Suazo is a citizen of the State of Georgia, who resides in Gwinnett County, Georgia. She is a small-business owner, she is Hispanic, she was born in Honduras, and she was forty-five years old at the time of the incident in question in this lawsuit.

6. Plaintiff Suazo is a longstanding member of the Gwinnett County community and is the longtime owner and operator of a family business selling furniture with both a physical and online presence.

7. Defendant Truist is a foreign corporation organized and existing in the State of North Carolina with its principal place of business and headquarters in Charlotte, North Carolina, and may be served with summons and process in this District through its duly authorized registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8. There exists complete diversity of citizenship between Suazo and Truist.

9. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorneys' fees, and Suazo anticipates seeking no less than Two Million Five Hundred Thousand Dollars ($2,500,000.00) at a trial in this matter.

10. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

11. Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) 1391(c)(2), and 1391(d) because Suazo is a resident in this District, because the majority of the events giving rise to this claim occurred in this District, and because Truist is subject to service and personal jurisdiction in this District.

12. This Court has personal jurisdiction over Truist pursuant to O.C.G.A. § 9-10-91, including because it transacts regular business within the State of Georgia sufficient to anticipate being haled into court in the State of Georgia and this District, including operating the store front giving rise to the claims at issue in this lawsuit.

13. This Court has personal jurisdiction over Truist pursuant to O.C.G.A. § 9-10-91, including because it filed the false police report at issue in this District and therefore anticipated being haled into court in the State of Georgia and this District specifically.

14. This Court further has personal jurisdiction over Truist because its defamation of Suazo has been directed specifically toward the State of Georgia and Suazo, including an effort by Truist to have Georgia law enforcement arrest, charge, and prosecute Suazo in this District.

15. Moreover, Truist conducts regular, systematic, and ongoing business

within the State of Georgia, irrespective of its Georgia business being directly tied to Suazo's claims in this lawsuit.

## FACTUAL BACKGROUND

### Suazo's Relationship to Truist

16. Suazo does not hold any account of any kind with Truist.

17. Suazo's ex-husband is a Truist customer.

18. Suazo visits Truist, including the storefront located at 2171 Pleasant Hill Road, Duluth, Georgia 30096 (the "Truist Duluth Location"), for the purpose of cashing checks written to her—and executed—by her ex-husband for child support, who holds an account with Truist.

### The Fraudulent Transaction

19. On the afternoon of June 14, 2023, Suazo entered the Truist Duluth Location to cash two child support checks—in a single transaction—executed by her ex-husband in the amount of $750.00 each. Suazo received $1,484.00 after being charged $16.00 in fees.

20. After waiting some minutes in the Teller line, including for other men and women to complete their transactions, Suazo lawfully presented and cashed a check, including upon the presentment of lawful identification and a lawfully executed check from her ex-husband, a Truist customer.

21. At or about the same time that Suazo entered the Truist Duluth

Location, a Black woman entered the Truist Duluth Location for the purpose of committing theft, identity fraud, and forgery, to unlawfully obtain approximately $20,000 from Truist (the "Actual Culprit"). *See* Exhibit A.

22. The Actual Culprit pretended to be a Truist customer, presented false identification for the Truist customer she was impersonating, and conducted two separate fraudulent transactions at the Truist Duluth Location. *See* Exhibit A.

23. First, the Actual Culprit cashed a fraudulent check in the amount of $6,111.23 drawn against a Truist customer's account. *See* Exhibit A.

24. Second, the Actual Culprit made a withdrawal from the victim's account in the amount of $13,670.00. *See* Exhibit A.

25. Suazo does not know the Actual Culprit or any individual or company associated with this transaction—aside from Truist itself—and had no involvement with any of them or these fraudulent transactions.

### The False and Defamatory Police Report

26. Sometime between June 14, 2023, and August 7, 2023, Truist realized that it had been defrauded in the amount of $19,781.23. *See* Exhibit A.

27. On August 7, 2023, Truist—through an in-house corporate investigator acting within the scope of his employment and authorization—filed a police report with the Gwinnett Police (the "Police Report").

28. As part of the Police Report, Truist submitted security footage and a

still frame of Suazo from her June 14, 2023, transaction at the Truist Duluth Location, asserting that it was Suazo who conducted the fraudulent transaction described above. Upon information and belief, Truist also submitted its own written fraud report. *See* Exhibit A.

29. On or around August 24, 2023, the Gwinnett Police republished Suazo's image and Truist's false claims that she committed theft, fraud, and forgery to the media.

30. Local media around Atlanta and Gwinnett County republished the Gwinnett Police's release—based upon Truist's Police Report—to the world via broadcast news, Internet articles, and social media.

31. Suazo learned of Truist's false claims because friends of the family recognized her as the person identified in the Gwinnett Police's media releases. On or around August 24, 2023, Suazo—through counsel—contacted the Gwinnett Police to advise of her identity and innocence, and then had an in-person meeting with the Gwinnett Police on August 29, 2023.

### Truist's Actual Malice

32. Suazo did not engage in any unlawful conduct, at all, and instead merely cashed two small checks at the Truist Duluth Location on the afternoon of June 14, 2023.

33. Suazo did not seek, was not given by Truist, and did not leave the Truist

Duluth Location with, a large stack of cash, including for the amounts allegedly stolen from Truist.

34. As shown in the Gwinnett Police's media releases, Truist possessed and relied upon its security footage from June 14, 2023, to identify the wrongdoer.

35. As shown in the Police Report, Truist submitted Suazo's image from the security footage to the Gwinnett Police, identifying her as the culprit.

36. According to the Gwinnett Police, it was Truist who identified Suazo as the wrongdoer in its submissions to the Gwinnett Police; *i.e.*, the Gwinnett Police either were not given or did not make an independent assessment of Suazo's guilt.[2]

37. Truist lacked *any* objective evidence that Suazo engaged in any misconduct, whether in the form of a human source or documentary evidence.

38. Truist's security footage does not show Suazo engaging in any kind of misconduct—or, for example, being handed and leaving with some $20,000.00 in cash—because she did not do so.

39. Instead, upon information and belief, Truist possesses and relied upon security footage showing both Suazo and the Actual Culprit present at the Truist Duluth Location at or around the same time. *See* Exhibit A.

40. Truist possessed and reviewed objective evidence that Suazo was not

---

[2] In response to public records requests, Gwinnett County has to date refused to disclose the information provided to the Gwinnett Police by Truist on the basis that the investigation into the fraudulent transaction is ongoing.

responsible for the fraudulent transaction, but disregarded that objective evidence and accused her of multiple felonies nonetheless.

41. Instead, upon information and belief, the very security footage purportedly relied upon by Truist showed the Actual Culprit—not Suazo—committing the fraudulent transaction.

42. Upon information and belief, Truist's own employee(s)—the teller who conducted the fraudulent transaction—reported to Truist that the Actual Culprit was a Black woman. *See* Exhibit A.

43. Suazo is Hispanic, not Black.

44. Despite the Actual Culprit being identified as a Black woman, and despite the security footage not showing Suazo engaging in any misconduct, Truist's corporate investigator who filed the Police Report did not contact the Truist tellers from the Truist Duluth Location to ascertain whether it was Suazo or another person who engaged in the fraudulent transaction, prior to Truist filing its false Police Report to the contrary.

45. Upon information and belief, including because Suazo's transaction was drawn from her ex-husband's account with Truist, Truist also failed to reach out to its own customers on whose account(s) transactions in and around this time were conducted to ascertain who the wrongdoer was, or to show Suazo's image to the teller prior to filing the Police Report.

46. In other words, in addition to disregarding its own employee's written report that the Actual Culprit was a Black woman and its own surveillance video showing that Suazo did not commit any misconduct, Truist failed to check with the most obvious sources for information and corroboration prior to levying its false accusations to the Gwinnett Police.

47. Instead, it was only after Suazo voluntarily contacted the Gwinnett Police to clear her name that Truist contacted its own teller who conducted the transaction to determine if Suazo was the culprit. During Suazo's meeting with the Gwinnett Police, the police advised that—after receiving Suazo's phone call the day prior—the police contacted Truist to advise them of Suazo's denial and to ask Truist to look into its investigation further. It was only then that Truist interviewed its teller, who "verified the internal investigation was wrong" and that Truist identified the wrong person.

48. Indeed, the Gwinnett Police advised Truist's ultimate conclusion was that the fraud was occurring while Suazo was at the bank but it was by another person, *i.e.*, the Actual Culprit.

49. Finally, upon information and belief, Truist had financial motivations for filing a police report against Suazo without any reasonable basis, including to identify a purported culprit for the purposes of obtaining insurance coverage.

50. In short, the objective evidence shows that Truist had actual malice—

knowledge of falsity and/or a reckless disregard for the truth.

### Demand to Mitigate Harm

51. On September 15, 2023, Suazo, through counsel, sent a letter to Truist requesting that it take all necessary steps to identify all publicly available reports of Truist's false accusations and to seek their prompt removal and correction.

52. Upon information and belief, including that many reports remain available and that Suazo (through counsel) has had to make requests of the media to take down and/or correct reports, Truist has failed to take any affirmative action to mitigate the reputational harm it caused to Suazo.

### CAUSE OF ACTION FOR DEFAMATION

53. Plaintiff Suazo incorporates by reference paragraphs 1 through 52 of this Complaint as though set forth in their entirety.

54. On or about August 7, 2023, Truist filed the Police Report and submitted various written materials in connection therewith, including their internal fraud report and photographs identifying Suazo as the guilty party.

55. Through its publications to the Gwinnett Police, Truist accused Suazo of, at least, (a) felony theft, (b) felony identity fraud, and (3) felony forgery (the "Accusations").

56. Truist's Accusations conveying that Suazo engaged in criminal conduct—of any kind—are wholly false.

57. Suazo had absolutely no involvement in stealing, fraud, or forgery.

58. The Accusations are defamatory per se, in that they accuse Suazo of criminal conduct.

59. Because the Accusations are defamatory per se, damages are presumed as a matter of law.

60. The Accusations are of and concerning Suazo, including because they identified Suazo through her image and photograph.

61. Georgia provides a *qualified* privilege to those making police reports in good faith.

62. Truist published its Accusations to a third party—the Gwinnett Police—without privilege, including because it did so in bad faith and with actual malice.

63. At a high level, Truist published its Accusations with actual malice because (a) it had no evidence that Suazo engaged in any misconduct and (b) it possessed and reviewed indisputable, myriad evidence of Suazo's innocence but contradicted, misstated, and overstated that evidence in making its Accusations.

64. Truist published its Accusations with actual malice—that is, with knowledge of falsity and/or a reckless disregard for the truth—in that Truist, its corporate investigator (Mike Dowd), and its employees at the Truist Duluth Location knew that Suazo did not commit any misconduct and that Truist lacked any

reasonable basis to assert otherwise.

65. Truist published its Accusations with actual malice in that Truist, its corporate investigator, and its employees at the Truist Duluth Location possessed and reviewed video evidence demonstrating that Suazo did not commit any misconduct but disregarded that evidence in making its Accusations.

66. Truist published its Accusations with actual malice in that Truist, its corporate investigator, and its employees at the Truist Duluth Location possessed and reviewed video evidence demonstrating that the Actual Culprit—not Suazo—committed the crimes at issue but disregarded that evidence in making its Accusations.

67. Truist published its Accusations with actual malice in that Truist's employees at the Truist Duluth Location internally reported to Truist that the culprit was a Black woman, but Truist—through its corporate investigator—disregarded that report and instead accused Suazo, a Hispanic woman, of committing the crimes at issue.

68. Truist published its Accusations with actual malice in that Truist fabricated and manipulated their source evidence—the surveillance video—by claiming to the Gwinnett Police that it showed something it did not show: Suazo committing theft, fraud, and forgery.

69. Truist published its Accusations with actual malice—including via a

purposeful avoidance of the truth—in that Truist and its corporate investigator failed to interview the Truist teller who conducted the fraudulent transaction, including to show the teller Suazo's photograph, prior to levying its false Accusations to the Gwinnett Police.

70. Truist published its Accusations with actual malice—including via a purposeful avoidance of the truth—in that Truist and its corporate investigator failed to interview its own customers on whose account(s) transactions were made in and around the fraudulent transaction occurred, to ascertain whether Suazo's transaction was legitimate.

71. In sum, Truist published its Accusations with actual malice in that it knew Suazo was innocent, recklessly disregarded Suazo's innocence, and/or, at a minimum, published its Accusations against Suazo without knowing whether they were true or false while simultaneously manipulating whatever evidence Truist claims to have to make it seem more condemnatory than it was. In fact, Truist's Accusations are a product of fabrication—it did not possess any source alleging, or evidence tending to demonstrate, that Suazo engaged in any misconduct.

72. As further indicia of actual malice, Truist has failed to take action to correct or clarify any of the false reporting resulting from its Accusations, despite being confronted with and acknowledging the falsity of its Accusations.

73. As further indicia of actual malice, upon information and belief,

including that a police report had to be filed in order for Truist to receive insurance coverage for the fraud, Truist published its Accusations with an ulterior financial motive, one other than bringing a criminal to justice.

74. Irrespective of presumed harm, Truist's Accusations caused significant reputational and emotional damages to Suazo.

75. Among the litany of usual and expected effects of defamation—garden variety reputational, emotional, and mental harm—Truist's Accusations also had the capacity to jeopardize Suazo's lawful immigration status and thereby remove her from her family, friends, and community.

76. As a result of Truist's Accusations, Suazo suffered reputational harm in her business. Indeed, one supplier explicitly discontinued its relationship with Suazo's business on the purported basis that it cannot be associated with frauds, and other individuals have inquired whether Suazo is still involved with the business.

77. Truist published its Accusations with the intent and knowledge that its Accusations would be re-published by Gwinnett County for the purpose of identifying Suazo via her photograph, *i.e.*, it was foreseeable to Truist that Gwinnett County would republish Suazo's photograph to the community in an effort to identify her by name, and that the media would do the same.

78. Suazo has suffered presumed and actual reputational, emotional, and mental harm.

79. Suazo is entitled to a trial by a jury of her peers, and to damages as determined by the enlightened conscience of the jury.

80. Suazo anticipates seeking at least $2.5 Million in damages at trial, reserving her right to increase or decrease that amount upon discovery and presentation of all relevant evidence.

81. Suazo is entitled to an award of punitive damages against Truist, including because it fabricated the allegations against her, and acted with ill-will and a knowledge that its conduct would case undue harm to Suazo.

82. Truist's actions were further taken in bad faith, and it has otherwise been stubbornly litigious, entitling Suazo to an award of her reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Karen Suazo respectfully petitions this Honorable Court for the following relief:

(a) That Summons and Process issue as provided by law;

(b) That Suazo be granted a trial before a jury of her peers;

(c) That Suazo be granted judgment and all appropriate damages against Truist for its false and defamatory per se Accusations;

(d) That the Court tax the costs of this action against Truist; and

(e) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 17th day of January, 2024.

/s/ G. Taylor Wilson
Nicole Jennings Wade
State Bar No. 390922
nwade@wgwlawfirm.com
Jonathan D. Grunberg
State Bar No. 869318
jgrunberg@wgwlawfirm.com
G. Taylor Wilson
State Bar No. 460781
twilson@wgwlawfirm.com

WADE, GRUNBERG & WILSON, LLC
Bank of America Plaza
600 Peachtree Street N.E.
Suite 3900
Atlanta, GA 30308
(404) 600-1153

*Attorneys for Plaintiff*

## LR 7.1D CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this *Complaint for Defamation* is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1C.

Dated: January 17, 2024.

/s/ *G. Taylor Wilson*
G. Taylor Wilson

*Counsel for Plaintiff*